EDWIN A. LOMBARD, Judge.
11Plaintiffs, Hazel E. Cooley, Betty E. LeBlanc, and Sally Viada, appeal the granting of summary judgment in favor of St. Bernard Parish Government, American Alternative Insurance Corporation, and Clarendon National Insurance Company pursuant to statutory immunity under La. Rev.Stat. 29:735, the Louisiana Homeland Security and Emergency Assistance and Disaster Act. For the following reasons, we affirm.

Factual and Procedural History

Plaintiffs are the siblings of Russell Em-bry and daughters of Dorothy R. Hingle, both of whom tragically drowned in their home in St. Bernard Parish on August 29, 2005, during Hurricane Katrina. Russell Embry had been confined to his bed as a result of severe brain damage that he had suffered over thirty years prior to Hurricane Katrina. Ms. Hingle, 83, Mr. Em-bry’s mother, was his registered caregiver. As a result of his condition, Mr. Embry and his mother had qualified for an evacuation assistance program for disabled and homebound residents in the event of a hurricane or other catastrophic event.
This evacuation assistance program was established and funded by a federal community services block grant to the St. Bernard Parish Government, and was administered by its Human Resources Division. The Human Resources Division Rwas charged with registering citizens who qualified for evacuation assistance and compiling a list known as the “Special Needs List.” On May 4, 2004, St. Bernard Parish and Acadian Ambulance Services, Inc. executed a “Contract for Emergency and Non-Emergency Ground Ambulance Services for the Parish of St. Bernard.” Under this contract, Acadian was obligated to perform the emergency evacuations of the citizens registered on the Special Needs List.
Mr. Embry and Ms. Hingle had routinely registered for the Special Needs List of evacuation assistance, and had been evacuated under the program on previous occasions during impending storms. They had registered for the 2005 hurricane season on June 20, 2005. The registration contained Mr. Embry’s name and stated his condition. Ms. Hingle was listed as his caregiver. Their registration sheet indicated that they both required evacuation in the event of an emergency.
On Friday, August 26, 2005, Governor Kathleen Babineaux Blanco issued Proclamation No. 48 KBB 2005, declaring a statewide state of emergency as a result of the impending Hurricane Katrina. In the early morning of Saturday, August 27, 2005, a state of emergency was issued locally in St. Bernard Parish. To execute *194 their contractual relationship with St. Bernard for emergency evacuations, Acadian Ambulance retained Janie Fuller to assist St. Bernard Parish Government with making calls to persons on the special needs list to confirm the need for transportation. Within hours, phone calls were made to all citizens on the special needs list. Phone records indicate that Ms. Hingle received a call from St. Bernard Human Resources at 10:25:55 a.m. on Saturday, August 27, 2005. Ms. Fuller forwarded the Special Needs List and all relevant information to Acadian’s dispatch office. Unfortunately, by the afternoon of Sunday, August 28, 2005, Acadian called Ms. Hingle to inform her that Acadian had ceased operations in St. |.^Bernard. Both parties indicate that Acadian had attributed the ceasing of their operations to high winds as well as the closure of the Louisiana Superdome as a special needs shelter. Ms. Hingle made several calls thereafter seeking evacuation assistance, but to no avail. On August 29, 2005, Mr. Embry and Ms. Hingle drowned in their home.
Plaintiffs filed this lawsuit on August 23, 2006, naming Acadian Ambulance and St. Bernard Parish Government as defendants, as well as yet-unknown insurance companies providing coverage to Acadian and St. Bernard Parish Government. Plaintiffs alleged wrongful death of Mr. Embry and Ms. Hingle against St. Bernard Parish Government, as well as survival claims related to fear of drowning and fear of death. Plaintiffs also alleged negligence in prohibiting the operation of ambulance services by anyone other than Acadian Ambulance and negligence in failing to evacuate Mr. Embry and Ms. Hin-gle. Plaintiffs later filed a supplemental and amending petition naming American Alternative Insurance Corporation (hereafter “AAIC”)[1] as defendant in its role as an insurer to St. Bernard Parish Government.
On March 16, 2007, St. Bernard Parish Government filed a motion for summary judgment, arguing that it is afforded immunity in the execution of emergency sendees under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, namely La. Rev. Stats. 29:722 and 29:735. On April 26, 2007, AAIC also filed for summary judgment merely arguing that if St. Bernard Parish is immune from liability, there can be no recovery against it. Plaintiffs opposed these motions, arguing that St. Bernard Parish Government has |4not submitted any evidence that an emergency was properly declared, and has not provided evidence as to whether any efforts were made to transport the evacuees.
On May 21, 2007, plaintiffs filed an additional supplemental and amending petition naming Clarendon National Insurance Company as a defendant providing insurance coverage to St. Bernard Parish Government. On June 25, 2007, the trial court issued a judgment dismissing St. Bernard Parish Government and AAIC’s motion for summary judgment without prejudice, reserving the rights of all parties to later reassert summary judgment. This was done to presumably allow more discovery on the substantive issues in the case.
On August 22, 2008, St. Bernard Parish Government filed a second motion for summary judgment, stating that “[t]he parties have conducted additional discovery, and the discovery shows that there is no genuine issue of material fact and Human Resources is entitled to judgment as a matter of law.” St. Bernard Parish Government *195 re-urged that it has immunity under the Homeland Security and Emergency statutes, and that Acadian simply failed to perform their duties of evacuating citizens on the special needs list. In support of summary judgment, St. Bernard Parish Government attached a declaration of State of Emergency dated August 27, 2005. The declaration was signed by Mr. Danny Menesses, the Chief Administrative Officer of St. Bernard Parish Government.
AAIC also re-urged summary judgment, attaching as evidence the policy declarations page signifying St. Bernard Parish Government as the named insured. By this time, numerous additional corporate depositions of Acadian personnel had taken place. Clarendon also filed a motion for summary judgment also arguing that they must be dismissed if St. Bernard Parish Government is held immune from liability. This second round of summary judgment motions were opposed by |sAcadian as well as plaintiffs, who challenged the constitutionality of the Homeland Security and Emergency immunity statutes.
In a judgment dated December 10, 2008, incorporated with extensive written reasons for judgment, the trial court granted summary judgment in part to St. Bernard Parish Government for all acts committed after the declaration of the state of emergency of August 27, 2005, “reserving acts of willful misconduct properly pleaded by amendment to Plaintiffs’ Petition and due proof advanced in the event of a further Motion for Summary Judgment when discovery is more complete.” The trial court further wrote:
This relief does not prevent or preclude the governmental agencies to present proof of a state of emergency condition existing earlier than the declaration and acts taken in furtherance of emergency preparedness for which immunity may apply, on further showing of such entitlement ...
... the portion of the governmental entities’ Motion for Summary Judgment for governmentál immunity for acts done prior to the emergency declaration is deferred until the compelled discovery is complete.
In this same judgment, the trial court also denied AAIC and Clarendon’s motions for summary judgment. A supervisory writ disposition from this Court, 2009-C-0064, states that the trial court apparently later granted a motion for new trial whereby it changed course and granted summary judgment in favor of Clarendon on February 13, 2009. The trial record, though, does not contain this judgment.
On February 25, 2009, Clarendon filed another motion for summary judgment, arguing this time that the policy at issue does not provide coverage for the acts alleged. On June 1, 2009, AAIC, as insurer of St. Bernard Parish Government, filed another motion for summary judgment. AAIC attached | (¡deposition testimony of St. Bernard officials who testified that the Special Needs List was properly sent and made available to Acadian Ambulance, as well as continuing to argue for complete immunity for emergency preparations at all times, during Hurricane Katrina’s approach and beyond. AAIC further argued that plaintiffs have not been able to present any evidence of willful misconduct on the part of St. Bernard Parish Government officials.
On June 11, 2009, plaintiffs filed a Motion for Partial Dismissal, indicating that they had reached an amicable settlement with Acadian Ambulance and their insurers, AAIC (as Acadian’s insurer only) and Evanston Insurance Company. An order of dismissal was signed by the trial court on June 11, 2009, dismissing plaintiffs’ claims against Acadian, as well as claims *196 against St. Bernard Parish Government and its insurers “with prejudice to the extent that those claims arise from or are in any way related to the Contract for Emergency and Non-Emergency Ground Ambulance Services between Acadian and the Parish of St. Bernard.”
In a judgment dated August 5, 2009, the trial court denied Clarendon’s latest motion for summary judgment, finding no merit in Clarendon’s argument that their coverage was only provided to the Human Resources Division and not St. Bernard Parish Government. The court found that St. Bernard Parish Government had absorbed all functions of the since defunct Human Resources Division. The trial court also denied AAIC’s motion for summary judgment, stating that further discovery was required concerning possible willful misconduct and whether immunity could be granted for actions taken before the declaration of state of emergency.
The remaining defendants filed for summary judgment again in September 2009. By this time additional depositions had been taken, including depositions of |7Janie Fuller and Sherri Baiamonte, the director of the St. Bernard Human Resources Division at the time of Hurricane Katrina. Plaintiffs filed a contradictory motion for summary judgment on September 28, 2009, arguing that the state emergency of August 27, 2005 had not been properly declared.
A hearing on these motions for summary judgment took place on February 18, 2010. The trial court held that the immunities of the Homeland Security Act are applicable for all times relevant to emergency preparations for Hurricane Katrina, not merely for actions after the August 27, 2009 declaration of emergency. The trial court held that a declaration of emergency was not necessary for the immunities to apply. The trial court further held that the immunity statute was constitutional. Summary judgment was granted to St. Bernard Parish Government as well as Clarendon and AAIC as its insurers. A judgment was executed on May 26, 2010, and this appeal timely followed.

Standard of Review; Summary Judgment Standard

Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate, i.e., “whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc., 2007-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. A fact is material “if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.” Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that |8mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966(B). The burden of proof on a motion for summary judgment remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La.Code Civ. Proc. art. 966(C)(2). Thereafter, if the adverse party *197 fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. In defending against a well-taken motion for summary judgment, the plaintiff may not rely upon the allegations contained in his pleadings, simply speculate, or otherwise posit the hypothetical existence of a genuine issue of material fact. Kelly v. AME Janitorial Services Co., 2009-1167, p. 5 (La.App. 4 Cir. 3/3/10), 33 So.3d 358, 361.

Assignments of Error

Plaintiffs first argue that the trial court erred in granting summary judgment to St. Bernard Parish Government because it failed to timely evacuate Mr. Embry and Ms. Hingle. Plaintiffs further argue that the immunity should apply only to actions taken after the declaration of emergency, and that there is a genuine issue of material fact as to whether St. Bernard Parish Government acted negligently prior to the declaration in their failure to timely evacuate. Secondly, plaintiffs contend that a state of emergency can only be declared by the parish president, while the emergency declared during Hurricane Katrina was signed by St. Bernard Parish’s Chief Administrative Officer, Danny Menesses. Plaintiffs therefore argue | nthat the declaration of emergency is invalid.
Next, plaintiffs aver that the failure of St. Bernard Parish to follow its own evacuation procedures constitutes willful misconduct. Finally, plaintiffs argue that St. Bernard Parish Government had a non-delegable duty to evacuate special needs persons in the event of emergencies.

Emergency Preparedness Immunity

The Louisiana Homeland Security and Emergency Assistance and Disaster Act, La.Rev.Stat. 29:721, et seq., was enacted for the following purposes:
[bjecause of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, flood, earthquake, or other natural or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana,.... La. Rev.Stat. 29:722(A).
A provision for immunity from negligence for the state and its political subdivisions and agencies was also incorporated into the Act. La.Rev.Stat. 29:735(A)(1) provides:
Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents’ employees or representatives of any of them engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity, (emphasis added).
In a very recent case stemming from Hurricane Katrina and concerning this immunity statute, this Court held:
Imlt is clear from the language of the statute that the state and its political subdivisions and agencies are entitled to total immunity. Liability on the part of directors and/or heads and other employees of these political subdivisions or agencies can only be found in cases of willful misconduct.
*198 Freeman v. State of Louisiana, 2007-1555, pp. 5-6 (La.App. 4 Cir. 4/2/08), 982 So.2d 903, 908. Because St. Bernard Parish Government is entitled to complete immunity from liability in its emergency preparedness activities under La.Rev.Stat. 29:735, and because plaintiffs have not presented any evidence in the face of summary judgment that St. Bernard Parish Government engaged in willful misconduct, we find that the trial court correctly granted summary judgment to St. Bernard Parish Government and its insurers. Therefore, we affirm the judgment of the trial court in entering summary judgment in favor of St. Bernard Parish Government as well as AAIC and Clarendon as its insurers.

Law and Analysis

First, contrary to plaintiffs’ contention, there is no holding in the jurisprudence that an emergency must be declared for the immunity provisions of La.Rev. Stat. 29:735 to apply. The legislative purposes of the Homeland Security and Emergency Assistance and Disaster Act are outlined broadly in La.Rev.Stat. 29:722: to preserve the lives and property of the people of the State of Louisiana.
The Act, in La.Rev.Stat. 29:723(3), defines an “emergency” in pertinent part as follows:
(3) “Emergency” means:
(a) The actual or threatened condition which has been or may be created by a disaster; or
(b)(i) Any natural or man-made event which results in an interruption in the delivery of utility services to any consumer of Insuch services and which affects the safety, health, or welfare of a Louisiana resident; or
(ii) Any instance in which a utility’s property is damaged and such damage creates a dangerous condition to the public.
La.Rev.Stat. 29:735 provides for immunity of government agencies and officials specifically for “emergency preparedness activities.” The Act defines “emergency preparedness” as follows:
(4) “Emergency preparedness” means the mitigation of, preparation for, response to, and the recovery from emergencies or disasters. The term “emergency preparedness” shall be synonymous with “civil defense”, “emergency management”, and other related programs of similar name, (emphasis added).
La.Rev.Stat. 29:723(4). Neither the definition of “emergency” nor the definition of “emergency preparedness” requires a declaration of an emergency to take place for the Act to take effect. There is no support for plaintiffs’ contention that a declaration of emergency is required for the governmental immunity provisions of the Homeland Security and Emergency Assistance and Disaster Act to take effect.
Furthermore, our analysis of the case jurisprudence regarding emergency preparedness immunity reveals no such requirement, either. In Hontex Enterprises, Inc. v. City of Westwego, 02-506 (La.App. 5 Cir. 12/11/02), 833 So.2d 1234, 1240, the Jefferson Parish president declared a state of emergency in the parish as a result of Tropical Storm Frances. Hontex operated a shrimp processing plant in the city of Westwego, and sought damages for flooded and destroyed seafood allegedly caused by the decision to build a ring levee around a pumping station and the seafood plant. The appellate court agreed that the defendant city was immune from liability for emergency preparedness to protect citizens from the threat of a flood.
|12In Castille v. Lafayette City-Parish Consolidated Government, 2004-1569 (La. *199 App. 3 Cir. 3/2/05), 896 So.2d 1261, the court found that emergency preparedness immunity under La.Rev.Stat. 29:735 applied when a motorist was injured as a result of an obstructed road view caused by hurricane debris at an intersection. A state of emergency had been declared by both the governor and parish president. The court stated:
The Lafayette City-Parish Consolidated Government is clearly a political subdivision of the state, so that it is immunized from liability for injuries suffered by persons as a result of the City’s response and recovery activities during an emergency. Castille, pp. 3^4, 896 So.2d at 1264.
In Clement v. Reeves, 2005-616 (La.App. 3 Cir. 6/28/06), 935 So.2d 279, the Court found that the emergency preparedness immunity did not apply to Lafayette City-Parish for failure to maintain an advance-turn warning sign, as the emergency declaration from Hurricane Lili had expired six days before the truck accident at issue. Plaintiffs argue that under Clement, the length of the declaration of emergency was paramount in deciding whether to apply the immunity. We disagree. The court importantly noted that “moreover, the ‘actual or threatened condition’ of Hurricane Lili had obviously long been over” by the time of the accident at issue. Clement, p. 10, 935 So.2d at 285.
Our review of the statutory definitions of an “emergency” and “emergency preparedness”, as well as our review of the relevant case law, reveals that the declaration of an emergency, though not insignificant for the purposes of executing emergency preparedness procedures, is not relevant to determining whether immunity under La.Rev.Stat. 29:735 applies. From these cases, it is clear that applying immunity was not dependent upon an official declaration of emergency, but whether an emergency situation existed, and whether the defendant | ^government was operating in a manner that promoted emergency preparedness and protection of persons and property.
Plaintiffs next argue that under La.Rev. Stat. 29:727, a declaration of emergency shall be made by a parish president only, and that it shall be filed in an office of the clerk of court of that parish. Plaintiffs therefore maintain that because these steps were not taken, an emergency was not properly declared in St. Bernard Parish, and that the St. Bernard Parish Government cannot therefore claim emergency preparedness immunity under La.Rev. Stat. 29:735. We find this argument to be without merit.
Under La.Rev.Stat. 29:727, the Homeland Security and Emergency Assistance and Disaster Act provides the president with the ability to establish a homeland security office within his or her respective parish. The Act allows a parish president to declare a disaster, but only as to “[a] local disaster or emergency.” La.Rev. Stat. 29:727(D). As to the requirement that the declaration of emergency be filed with the clerk of court, the statute again clearly states:
Any order or proclamation declaring, continuing, or terminating a local disaster or emergency shall be given prompt and general publicity and shall be filed promptly with the office of emergency preparedness and the office of the clerk of court, (emphasis added). Id.
Notably, La.Rev.Stat. 29:727 does not supplant the powers of the governor, and clearly maintains the governor’s jurisdiction to declare an emergency within a political subdivision:
A. Each political subdivision within this state shall be within the jurisdiction of and served by the Governor’s Office of Homeland *200 Security and Emergency Preparedness for purposes of homeland security and emergency preparedness and by a parish homeland security and emergency preparedness agency responsible for emergency |14or disaster mitigation, preparedness, response, and recovery. La.Rev.Stat. 29:727(A) (emphasis added).
In the matter sub judice, a declaration of emergency under La.Rev.Stat. 29:727(D) specifically by a parish president was not required, as the rapidly approaching Hurricane Katrina was clearly larger in scale than that of a “local disaster or emergency.” A statewide declaration of emergency was properly issued by Governor Kathleen Babineaux Blanco and in effect during the entire time encompassing the events at issue.[2] Therefore, we need not address plaintiffs’ arguments as to the validity of the August 27, 2005 declaration of emergency by St. Bernard Parish Government.
Because we find that the immunity provision applies, we must next determine whether plaintiffs have presented evidence to show willful misconduct on the part of St. Bernard Parish Government. While the Louisiana case law pertaining to emergency preparedness has not defined “willful misconduct,” Black’s Law Dictionary has defined “misconduct” as “[a] dereliction of duty; unlawful or improper behavior,” and “willful misconduct” as “misconduct committed voluntarily and intentionally.” Black’s Law Dictionary 1019 (8th ed.2004).
In the matter sub judice, the parties engaged extensively in the discovery process at the guidance of the trial court. Numerous depositions were taken, including that of Sherri Baiamonte, the former Director of the St. Bernard Parish Human Resources Division. Ms. Baiamonte testified that the Special Needs List compiled by St. Bernard Parish was made available to Acadian Ambulance as early 115as Friday, August 26, 2005, and Janie Fuller, Acadian’s liaison to Human Resources, testified that she called all persons on the Special Needs List. The trial court record indicates that St. Bernard Parish performed its duties in the compiling of the list of evacuees and relaying all of the information to Acadian. Plaintiffs have presented no evidence in the face of summary judgment showing that any St. Bernard Parish official acted with willful misconduct. Therefore, the emergency preparedness immunities of La.Rev.Stat. 29:735 apply, and judgment in favor of St. Bernard Parish Government, AAIC, and Clarendon is appropriate as a matter of law.
Lastly, we find no merit in plaintiffs’ final argument that St. Bernard Parish Government has a non-delegable duty to evacuate special-needs citizens in the event of an emergency. Our review of Louisiana statutory and case law reveals no such duty. Furthermore, disallowing a parish from contracting with ambulance companies and medical personnel would frustrate a parish’s ability to provide emergency and non-emergency police and medical services. Parish governments and other political subdivisions simply do not have the financial means to employ their own fleet of ambulances, medical personnel, or other similar goods and services *201 that would become vital in an emergency situation.

Conclusion

The facts and circumstances surrounding the deaths of Russell Embry and Dorothy Hingle are profoundly tragic. The facts given in the record provide no discernible reason why, as special needs citizens in need of help, Mr. Embry and Ms. Hingle were not picked up by Acadian Ambulance as they were promised. Nevertheless, at all relevant times St. Bernard Parish Government officials were operating in a situation of dire emergency preparedness with the impending arrival 11fiof Hurricane Katrina. A statewide declaration of emergency had been issued, and St. Bernard officials executed the appropriate phone call procedures to the citizens on the Special Needs List. Because plaintiffs have failed to present any evidence demonstrating willful misconduct by St. Bernard Parish officials, St. Bernard Parish Government and its insurers are entitled to emergency preparedness immunity under La.Rev.Stat. 29:735 as a matter of law. Freeman v. State of Louisiana, 2007-1555 (La.App.4 Cir. 4/2/08), 982 So.2d 903.

Decree

The judgment granting summary judgment in favor of St. Bernard Parish Government, American Alternative Insurance Corporation, and Clarendon National Insurance Company is affirmed.
AFFIRMED

. AAIC also provided coverage to Acadian Ambulance in this matter, but AAIC will be discussed in this opinion in their role as insurer to St. Bernard Parish Government, unless stated otherwise.

. Governor Kathleen Babineaux Blanco, Proclamation No. 48 KBB 2005, Declaration of State of Emergency for Hurricane Katrina, effective from Friday, August 26, 2005 through Sunday, September 25, 2005 (First declaration of emergency regarding Hurricane Katrina).